IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLGA GALLEGOS and THOMAS J. HORNE,
as co-personal representatives of the Estate of
Ronald G. Jacquez, Jr.; OLGA GALLEGOS,
Individually; and ANASTASIA GALLEGOS
ORTEGA, Individually,

        Plaintiffs,

vs.                                                                           No. CIV 08-0014 RB/LFG

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. 42), filed on September 12, 2008. Jurisdiction arises under 28 U.S.C. § 1346(b)(1). On December 19, 2008, the Court heard oral argument on this motion. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I deny the motion.

**I.**    **Background.**

On July 22, 2005, twenty-year-old Ronald G. Jacquez, Jr. died after a cottonwood tree fell on his tent while he was camping at the Box Canyon Recreation Area (herein "BCRA") in the Gila National Forest, near Cliff, New Mexico. Plaintiffs brought this action for the wrongful death of Mr. Jacquez under the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §§ 1346(b), 2671, and 2674. Plaintiffs claim that the tree was a "hazard tree" that should have been removed, or warning signs posted, or the area closed to camping. Specifically, Plaintiffs allege that (1) Defendant's employees were negligent in failing to exercise ordinary care to adequately maintain the premises in a condition safe for the visiting public; (2) Defendant's employees were negligent in failing to

correct the dangerous condition which existed; (3) Defendant's employees were negligent in failing to warn the public of the dangerous condition; (4) Defendant's employees were negligent in failing to restrict or prohibit access by the visiting public to the dangerous condition; and (5) Defendant's employees were negligent in failing to inspect for hazard trees.

Defendant claims that the site of the incident was not located in a developed recreation area, but was located in the general forest. In its Motion for Summary Judgment, Defendant asserts that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), applies, and therefore, the Court does not have jurisdiction over the claims made by Plaintiffs because there is no waiver of sovereign immunity. Specifically, Defendant argues: (1) there are no mandatory federal statutes, regulations or directives which apply to the conduct at issue; (2) the policy considerations at issue are the kind that the discretionary function exception was designed to shield; and (3) Plaintiffs' claims are barred by the New Mexico Recreational Use Statute (herein "NMRUS"), N.M. Stat. Ann. § 17-4-7.

## II.	Facts.

The following statement of facts is set forth in the light most favorable to Plaintiffs, with all reasonable inferences from the record drawn in their favor. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1222-23 (10th Cir. 2008).

The BCRA[1] is a riparian area nestled near the confluence of the Gila River and Mogollon Creek, within the Gila National Forest, about 40 miles northwest of Silver City, and several miles northeast of the communities of Cliff and Gila. The BCRA has been a popular destination for

---

[1] In addition to BCRA, the area in question has been known by various names, including "Mogollon Box Dispersed Recreation Area" (Doc. 42-2), "Mogollon Box Canyon Campground" (Doc. 52-30), "Box Canyon Campground" (Doc. 52-4), "Mogollon Box" (Doc. 42-2), "Box Canyon" (Doc. 42-2; 52-10, Pls. Ex. 9, Ortiz Decl.), and "the Box" (Doc. 42-2). The particular name used to describe the area is not relevant to the analysis herein.

camping, picnicking, and river activities for more than half a century.  (Pls. Ex. 9, Declaration of Arnold Ortiz ¶ 3.)  The photographs and power point presentation admitted as exhibits at oral argument vividly illustrate the verdant and idyllic characteristics of the BCRA.  (Pls. Ex. 1; Def. Exs. H and I.)

The BCRA is open to the public free of charge.  (Def. Ex. A, Declaration of Russell Ward ¶ 6.)  The Forest Service maintains a gravel road to the BCRA and has installed signs, two bulletin boards, partial fencing, parking areas, two public toilets, and two trash receptacles at the BCRA.  (Ward Decl. ¶ 7; Pls. Ex. 26.)  The toilets and trash receptacles were installed "for sanitary purposes and to protect the environment."  (Ward Decl. ¶ 7.)  The Forest Service has not designated picnic tables, campsites, or fire rings at the BCRA.  (Ward Decl. ¶ 8.)

Large numbers of people congregate at the BCRA, especially on weekends and holidays during the summer.  (Ortiz Decl.¶ 2)  In April 2005,[2] after Western New Mexico University's annual Great Race, over 200 people attended a party at the BCRA.  (Pls. Ex. 10; Deposition of Manny Provencio at 45.)  In May 2005, the BCRA served as the staging area for hikes and birding field trips during the annual Gila River Festival.  (Pls. Ex. 20.)  David Warnack, a Forest Service official, led a hike during the festival in his capacity as "USFS ranger" and, after the hike, participants returned to the BCRA via "USFS vehicle."  (*Id.*)  The data sheets kept by the Silver City Ranger District document the high level of public usage of the area.  (Pls. Ex. 17, Bervin Depo. at 41-42; Ortiz Decl. ¶ 3; Provencio Depo. at 45-46; Pls. Ex. 5.)

The Gila River is the major attraction at the BCRA.  (Provencio Depo. at 8) ("everybody would go out to get in the water.")  Indeed, the BCRA is the closest place to Silver City where

---

[2] The Great Race is held every April at Western New Mexico University in Silver City. http://silvercity.org/special-events-and-what-to-do-in-silver-city-grant-county.php

people "can really go to the river and get in." (Provencio Depo. at 8.) Photographs underscore the pervasiveness of human activity at the site by revealing a sandy grove covered in footprints, a fire ring, and a semi-circle of stones in the river. (Def. Exs. H and I.) Other photographs of the area show a child's floaty toy left on a sandy beach, and people swimming in the river. (Pls. Ex. 32.)

In 1995, the Forest Service issued a closure order that prohibited the use of motorized vehicles beyond the fence and boulders. (Def. Ex. F; Ward Decl. ¶ 9; Def. Ex. C, Ward Depo. at 56.) The closure order, which was reissued in 2005, states that the affected area was an "area known locally as the 'Box Canyon Recreation Area', or just the 'Box'. " (Def. Ex. F.) The map attached to the closure order has a bold outline surrounding the area closed to motorized vehicles. (*Id*.) The boundary of the area in the BCRA closed to motor vehicle use is defined by large rock boulders to the north and northeast, a partial wire fence on the east and south boundary, and a steep natural slope on the west boundary. (Ward Decl. ¶¶ 4-5.) The site of the fatality is within the area closed to motor vehicle use. (Def. Ex. E.) The Gila River is also within the bordered area of the map, near the incident site. (Def. Exs. E and F.; Pls. Ex. 18.)

The purpose of the closure order was to protect sensitive resources, such as threatened and endangered fish species, as well as to prevent additional motor vehicle damage to the delicate riparian environment. (Ward Decl. ¶ 9; Ward Depo. at 56.) Notably, the closure order did not prohibit foot traffic or camping in the subject area. (Pls. Ex. 1.) The Forest Service installed signs on the partial fence stating "No Motor Vehicles - Foot Travel Permitted." (*Id*.) Citations issued to persons using vehicles within the closed area designate the place of offense as the "Box Canyon Recreation Area." (Pls. Ex. 6.)

On July 21, 2005, Mr. Jacquez, his cousin, Manny Provencio, and several friends camped at the BCRA, between the parking area and the Gila River. (Provencio Depo. at 22.) The campsite

was located within 108 paces of the parking area, restrooms, and trash receptacle. (Pls. Ex. 1.)  The group chose the campsite because it already had a fire ring, it was sandy, and there were no rocks. (Provencio Depo. at 22.)  During the night, Mr. Jacquez and Mr. Provencio moved their tent closer to the fire ring to get away from some skunks.  (Provencio Depo. at 18-19.)  The fire ring had been at this site for as long as Mr. Provencio could remember.  (Provencio Depo. at 19.)

 At approximately 1:30 a.m. on July 22, 2005, a dead cottonwood tree broke off at its base and fell onto the tent occupied by Mr. Jacquez and Mr. Provencio.  It is undisputed that the trunk of the tree struck Mr. Jacquez, causing multiple blunt force injuries.  It is also undisputed that, as a result of the injuries, Mr. Jacquez was pronounced dead at the Gila Regional Medical Center in Silver City at 3:22 a.m. on July 22, 2005. The Forest Service report and photos for the incident identify the location of the incident as "Box Canyon Recreation Area."  (Pls. Ex. 4.)

The subject cottonwood tree had been dead at least five years before the incident. (Pls. Ex. 2, Bervin Report; Pls. Ex. 12, Rogers Depo. at 87.)  Cottonwoods are rated as very high hazard trees. (Rogers Depo. at 95.)  A snag (a dead standing tree) threatens a forest visitor any time it is in an area of concentrated use. (Pls. Ex. 17, Bervin Depo. at 33.)

David Warnack, the Forest Service official in charge of recreation crews at the time of the fatal incident, had no formal training in hazard tree evaluation.  (Pls. Ex. 11, Warnack Depo. at 10.) At the time of the fatal incident, Mr. Warnack was unaware of what a tree hazard high risk zone was. (Warnack Depo. at 71.)  The Silver City Ranger District, for the period from July 1, 1999 through July 22, 2005, has no documentation of hazard tree inspections at recreation sites and no documentation of corrective action taken to mitigate or remove hazard trees from recreation sites. (Pls. Ex. 14, Ward Depo. at 5-6.)

After the fatal accident in this case, fourteen hazardous trees were removed from the Box

Canyon Recreation Area. (Pls. Ex. 25, Def.'s Answer to Pls.' Interrogatory No. 12; Ex. 7.) At least two of the fourteen trees removed from the BCRA, as documented in the "Silver City RD Hazard Tree Removal 2005", were in close proximity to the site of the incident. (Rogers Depo. at 108-09; Pls. Ex. 28.)

### III. Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008).

### IV. Discussion.

#### A. Overview of the discretionary function exception.

The United States of America, as a sovereign, is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Through the FTCA, the United States has waived its sovereign immunity for:

> claims . . . for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674.

The FTCA's waiver of immunity is limited to causes of action against the United States arising out of certain torts committed by federal employees acting within the scope of their

6

employment. *See United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA is additionally limited by the "discretionary function" exception, which provides that the Government cannot be sued for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The "discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) (quotations omitted). The exception applies only if the duties of the government employees were discretionary, and "it is irrelevant whether the government employees were negligent." *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002); *see also Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004).

The Supreme Court has devised a two-part test to determine the applicability of the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The first prong of the *Berkovitz* test inquires whether a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Id*., 486 U.S. at 536. In order to qualify as "prescribed," the course of action must be "specific and mandatory." *Aragon*, 146 F.3d at 823. If a federal statute, regulation, or policy imposes specific or mandatory directives, conduct pursuant to that directive is not discretionary since "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. However, if the course of action involves a matter of choice

7

or judgment, then the action is discretionary, and the inquiry proceeds to the second prong of the *Berkovitz* test. *Id.*; *see also Elder*, 312 F.3d at 1176; *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir. 1997).

The second prong of the *Berkovitz* test inquires whether the exercise of judgment or choice at issue "is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Only governmental actions and decisions based on considerations of public policy are protected by the exception. *Id.*, 486 U.S. at 537. The goal of this inquiry is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). The subjective intent of the employee is irrelevant; the question is whether the nature of the actions implicate public policy concerns, or are susceptible to policy analysis. *Lopez*, 376 F.3d at 1057 (quoting *United States v. Gaubert,* 499 U.S. 315, 325 (1991)).

**B.     Plaintiffs have satisfied the first prong of *Berkovitz* as to Section 2332.11.**

Plaintiffs contend that the duty of the United States to inspect and remove a tree hazard from a public recreation site was prescribed by portions of the Forest Service Manual (herein "FSM"). The United States counters that the same provisions are discretionary and the Forest Service's decisions regarding the management and delineation of the BCRA are matters of discretion.

Plaintiffs rely on the following sections of the FSM:

2332.1 - Public Safety. To the extent practicable, eliminate safety hazards from recreation sites. To accomplish this, inspect each public recreation site annually before the beginning of the managed-use season. Maintain a record of the inspections and corrective actions taken with a copy of the operation and maintenance plan. Immediately correct high-priority hazards that develop or are identified during the operating season or close the site.

2332.11 - Tree Hazards. Remove hazardous trees or tree limbs on sites, but take care to preserve the recreation resource. Obtain assistance from timber management,

forest pest management, and recreation specialists, as necessary.

2332.12 - Other Natural Hazards. If possible, correct known natural hazards when a site is developed and opened for public use. If it is not possible to remove the hazard, take immediate steps to protect the public from the hazard. Tailor the action taken to each hazardous situation. Post signs or other notices at a minimum. Consider installing barriers or closing the site altogether to ensure public safety.

In order to meet the first prong of *Berkowitz*, Plaintiffs must demonstrate that the government's actions "involved no element of choice." *Elder*, 312 F.3d at 1177. Sections 2332.1 and 2332.12 do not satisfy this standard. Sections 2332.1 and 2332.12 invoke the exercise of judgment because they contain precatory language intended to provide guidance on how to manage recreation sites. Such statements establish that these sections were intended to provide guidance to the agency and are not entitled to the force and effect of law. *See Aragon*, 146 F.3d at 824-25. Sections 2332.1 and 2332.12 do not support Plaintiffs' position because they do not eliminate all elements of judgment and discretion from the Forest Service in managing public safety at recreation sites. *See Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997); *Figueroa v. United States*, 64 F.Supp.2d 1125, 1131 (D. Utah 1999); *Gadd v. United States*, 971 F.Supp. 502, 507-08 (D.Utah 1997).

The language of Section 2332.11, however, leaves no room for choice. Section 2332.11 requires the Forest Service to remove hazardous trees on recreation sites, while at the same time preserving the resource. This language is undeniably mandatory and specifically prescribes a course of action. In order to avoid application of this mandatory language, Defendant attempts to shift the focus of the inquiry to the delineation of the BCRA. According to Defendant, the area between the access road and the Gila River is not part of the BCRA, but instead, part of the general forest. Defendant contends that it had no duty to inspect for hazard trees beyond the boundary of the 1995 closure order. This argument is unsupported by the closure order and the facts.

9

The closure order prohibited only the use of motorized vehicles beyond the boundary. The closure order had no effect on other uses, such as camping, hiking, picnicking or fishing, in the area beyond the boundary. The boundary itself contained gaps, and signs were posted explaining that the area was closed to motor vehicle use, but that foot travel was permitted. The record demonstrates that the Gila River is the major attraction that draws people to the BCRA. The Gila River, which is the primary attraction of the BCRA, lies beyond the boundary. The Forest Service was aware that the area subject to the closure order has received heavy public use for decades.

The record establishes that the area where the incident occurred was part of the BCRA. In that the site of the incident was within a recreation site, the mandatory language of Section 2332.11 required the Forest Service to remove hazardous trees. Plaintiffs have satisfied the first prong of the *Berkovitz* test as to Section 2332.11. The inquiry proceeds to the second prong of *Berkovitz* with respect to Section 2332.1 and Section 2332.12. *See Duke*, 131 F.3d at 1410 (proceeding to the second prong of the discretionary function test after determination that the challenged conduct involves discretionary judgment).

**(C)     Plaintiffs have satisfied the second prong of *Berkovitz*.**

The second prong of the *Berkovitz* test inquires whether the exercise of judgment or choice at issue "is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The goal of this inquiry is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*, 486 U.S. at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). To prevail on the second prong of *Berkovitz* and avoid dismissal, Plaintiffs "must allege facts [that] would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 324-25.

10

In his concurring opinion in *Gaubert*, Justice Scalia acknowledged the difficulties experienced by courts in application of the second prong of *Berkovitz*. *See Gaubert*, 499 U.S. at 335 (Scalia, J., concurring). The Tenth Circuit recognized the inherent problems in application of the second prong of *Berkovitz* by stating:

> nearly every governmental action is, to some extent, subject to policy analysis-to some argument that it was influenced by economics or the like. An added difficulty is that a failure to act can be a policy decision; and a failure to think about acting may still be 'susceptible to policy analysis.'

*Duke*, 131 F.3d at 1410.

The Tenth Circuit cogently observed:

> This permits the government to argue, as it appears to do here, that decisions-or non decisions-that involve choice and any hint of policy concerns are discretionary and within the exception. We agree . . . that this approach . . . would not only eviscerate the second step of the analysis set out in *Berkovitz* and *Gaubert*, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity . . .. We must ask if the decision or non-decision implicates the exercise of a policy judgment of a social, economic or political nature.

*Duke*, 131 F.3d at 1411 (internal quotations and citations omitted).

The fine distinctions and commonsense approach required for application of the second prong of *Berkovitz* are illustrated in *Duke*. The plaintiffs in *Duke* were camping near the Quemado Lake Dam in the Gila National Forest. The plaintiffs were not in a developed campsite, but were across the road from a developed campsite. The construction of a state road had created a risk of boulders rolling down a hill. The plaintiffs' child suffered a brain injury when a boulder rolled down a hillside and smashed into their tent. The Forest Service admitted that although, there were no signs designating the spot for camping, camping had always been allowed there, as reflected in the fact that there was an existing fire ring. *Duke*, 131 F.3d at 1409-10.

In reversing the district court's determination that it lacked subject matter jurisdiction under

11

the discretionary function exception, the Tenth Circuit held that the Forest Service's failure to provide any warning of this risk was not protected by the discretionary function doctrine because, in contrast to other cases, this situation involved a specific, known risk, and there were no public policy considerations at issue. *Duke*, 131 F.3d at 1411. The court contrasted the generalized risks of the wilderness and the public policy considerations that go into keeping an area pristine, with those cases in which the court had found that a failure to warn did not involve a public policy consideration:

> In each of these cases the court could not perceive in the record before it any significant social, economic or political policy in the action or inaction that allegedly contributed to the injury giving rise to the lawsuit. In these cases, a specific hazard existed, distinct from the multitude of hazards that might exist in, for example, a wilderness trail through a national park or forest, where warnings might detract from the area's character or safety structures might be costly.

*Duke*, 131 F.3d at 1411.

The dead cottonwood tree presented a specific hazard similar to the situation in *Duke*. Forest Service officials decided to close the area to motor vehicle use in order to protect fish and the environment. The same officials decided not to remove hazard trees in the area, not to post warning signs, and not to completely close the area. Decisions that require choice are exempt from suit under the FTCA only if they are "susceptible to policy judgment and involve an exercise of political, social, [or] economic judgment." *Gaubert*, 499 U.S. at 325. The record presents no significant social, economic, or political policy considerations in the Forest Service's failure to remove hazard trees from the area of the closure order within the BCRA, to warn the public that hazard trees were left standing in the area, or to completely close the area to public use. The actions and inactions of the Forest Service officials in this regard do not fall under the discretionary function exception to the FTCA. *See Duke*, 131 F.3d at 1411-12; *Francis v. United States*, Slip Copy, 2009 WL 236691

(D. Utah, Jan. 30, 2009).

Forest Service officials knew that the site of the fatality received long-term heavy public use. These officials decided not to remove hazard trees from that area, not to warn the public of the hazard, and not to completely close the area. Defendant's failure to take any precautionary measures regarding the hazard trees does not fall under the discretionary function exception to the FTCA. Accordingly, the discretionary function exception is inapplicable.

**D.     The NMRUS does not confer immunity on the United States.**

The FTCA provides that the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, for "personal injury or death . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The law of the place where the negligence occurred applies to substantive questions of liability under the FTCA. 28 U.S.C. § 1346(b); *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006). The parties agree that the law of the State of New Mexico is applicable.

Defendant contends that it is entitled to immunity from suit under the NMRUS, which provides in pertinent part:

> Any owner, lessee or person in control of lands who, without charge or other consideration, other than a consideration paid to said landowner by the state, the federal government or any other governmental agency, grants permission to any person or group to use his lands for the purpose of hunting, fishing, trapping, camping, hiking, sightseeing or any other recreational use does not thereby:
>
> (1) extend any assurance that the premises are safe for each purpose; or
>
> (2) assume any duty of care to keep such lands safe for entry or use; or
>
> (3) assume responsibility or liability for any injury or damage to, or caused by, such person or group;

13

>    (4) assume any greater responsibility, duty of care or liability to such person or group, than if such permission had not been granted and such person or group were trespassers.

N.M. Stat. Ann. § 17-4-7(A).

In 1990, the Tenth Circuit held that the NMRUS applied to an FTCA claim. *Maldonado v. United States*, 893 F.2d 267, 268 (10th Cir. 1990). In *Maldonado*, the plaintiff was injured in a diving accident at Soda Dam on the Jemez River within the Santa Fe National Forest. *Id*. Soda Dam is owned by the United States, but open to the public free of charge. *Id*. The Tenth Circuit affirmed the trial court's determination that the NMRUS applied and barred the FTCA claim. *Id*. In this case, the BCRA was open to the public free of charge. Mr. Jacquez did not pay a fee to use the BCRA. Plaintiffs' argument equating Mr. Jacquez's payment of federal income tax to payment of a fee to use the BCRA, while creative, is unpersuasive. The Court expresses no opinion herein as to the standard of care if the NMRUS were applicable.

In *Maldonado,* the Tenth Circuit found it persuasive "that many Courts, including this circuit, have applied similar state recreational use statutes to the United States." *Id*. The Tenth Circuit in *Maldonado* did not look to New Mexico law because, in 1990, the New Mexico appellate courts had not spoken on the issue of whether the NMRUS applies to public landowners. In more recent years, however, the New Mexico Court of Appeals has issued two opinions that discuss the NMRUS. A fair reading of these opinions leads to the conclusion that the NMRUS does not apply to United States.

In 2002, the New Mexico Court of Appeals rejected the NMRUS as a defense to an injury on public school grounds, stating, in dicta, "[w]e have some doubts, therefore, as to whether the RUS protects government entities from liability. *Lucero v. Richardson & Richardson, Inc.,* 39 P.3d 739, 742-43 (N.M. App. 2002). In 2008, the New Mexico Court of Appeals examined the NMRUS

14

in pari materia with the Off-Highway Motor Vehicle Act, N.M. Stat. Ann. § 66-3-1013(A) (herein "OHMVA") and held that the OHMVA does not apply to public landowners. *Martin v. Middle Rio Grande Conservancy Dist.*, 194 P.3d 766, 767-70 (N.M. App. 2008).

The Court finds that the New Mexico Supreme Court would hold that the NMRUS does not apply to the United States. Therefore, the NMRUS does not confer immunity on the United States.

## V.   Conclusion.

Plaintiffs have established that the discretionary function exception is inapplicable. The Court has subject matter jurisdiction over Plaintiffs' FTCA claims. The NMRUS does not confer immunity on Defendant.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 42), filed on September 12, 2008, is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**